UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIERRA CLUB<br>85 Second Street, 2nd Floor<br>San Francisco, CA 94105,<br><br>        Plaintiff,<br><br>v.<br><br>LISA P. JACKSON, in her official capacity<br>as Administrator, United States Environmental<br>Protection Agency,<br>Ariel Rios Building<br>1200 Pennsylvania Avenue, NW<br>Washington, D.C. 20460,<br><br>        Defendant. | CIVIL FILE ACTION NO._____ |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

**I. INTRODUCTION**

1.  Plaintiff SIERRA CLUB challenges the failure of Defendant, LISA P. JACKSON, in her official capacity as Administrator of the United States Environmental Protection Agency ("EPA") to perform mandatory duties required by the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401-7671q. Specifically, the Clean Air Act establishes a mandatory sixty (60) day deadline for Defendant to grant or deny a citizen petition for an objection to a Clean Air Act Title V permit. 42 U.S.C. § 7661d(b)(2). EPA has failed to meet this deadline with respect to a petition filed by Plaintiff seeking EPA's objection to a Clean Air Act operating permit for the East Kentucky Power Cooperative ("EKPC") William C. Dale Power Station ("Dale"), a dirty, old coal-fired power plant. Plaintiff filed its Petition on November 21, 2008. Despite the passage of well over 60 days, Defendant has not responded to Plaintiff's petition.

1

## II. JURISDICTION, VENUE AND NOTICE

2.     This action is brought pursuant to the Clean Air Act, 42. U.S.C. § 7401, *et seq.* Thus, this Court has subject matter jurisdiction over the claims set forth in this compliant pursuant to 42 U.S.C. § 7604(a)(2). This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question). An actual controversy exists between the parties. This case does not concern federal taxes, is not a proceeding under 11 U.S.C. §§ 505 or 1146, and does not involve the Tariff Act of 1930. Thus, this Court has authority to order the declaratory relief requested under 28 U.S.C. § 2201. If the Court orders declaratory relief, 28 U.S.C. § 2202 authorizes this Court to issue injunctive relief.

3.     A substantial part of the alleged events or omissions giving rise to Plaintiff's claims occurred in the District of Columbia. In addition, Defendant Lisa P. Jackson officially resides in the District of Columbia. Thus, venue is proper in this Court pursuant to 28 U.S.C. §1391(e).

4.     On March 9, 2009, Plaintiff mailed a letter via certified mail, return receipt requested to Defendant Lisa P. Jackson stating that Plaintiff intended to sue Defendant for failure to respond to Plaintiff's petition for an objection to the Dale Title V permit within sixty (60) days. The certified mail return receipt was signed as received as of March 17, 2009.

5.     More than sixty (60) days has passed since Defendant received Plaintiff's notice of intent to sue letter. Defendant has not remedied the violations alleged in this Complaint. Therefore, an actual controversy exists between the parties.

### III.     PARTIES

6.     Plaintiff SIERRA CLUB is a nonprofit public-benefit corporation organized and existing under the laws of California with more than 700,000 members in the United States and with one or more chapters in every state. In Kentucky, the Sierra Club members are organized as

the Cumberland Chapter, with over 4,300 members across the Commonwealth. The Sierra Club's purpose includes "to practice and to promote responsible use of the earth's ecosystem and resources; to enlist and to educate humanity to protect and to restore the quality of the natural and human environment, and to use all lawful means to carry out these objectives." Sierra Club activities include hiking, canoeing, caving, swimming, fishing, nature study, and advocacy for the improvement and protection of water quality and air quality across the state.

7. Sierra Club members live, work, recreate and engage in economic activities in and around areas that are impacted by Dale's pollution and will continue to do so on a regular basis in the future. Because Defendant has not responded to their petition, Sierra Club's members cannot be certain that Dale's Title V permit conforms to the Clean Air Act's requirements. Sierra Club's members do not believe that Dale's Title V permit conforms with the requirements of the CAA. EPA's failure to respond to Plaintiff's petition prevents Sierra Club's members from being certain that the Dale permit protects them from exposure to illegal levels of pollutants emitted by Dale.

8. For the foregoing reasons, EPA's failure to respond to Plaintiff's petition has caused, is causing, and unless this Court grants the requested relief, will continue to cause Plaintiff's concrete injuries, which are directly traceable to EPA's failure to act and will be redressed by EPA's action.

9. Defendant LISA P. JACKSON is sued in her official capacity as the Administrator of the EPA. She is charged in that role with taking various actions to implement and enforce the Clean Air Act, including the requirement to grant or deny Plaintiff's petition within sixty (60) days and the actions sought in this Complaint.

## IV. STATUTORY FRAMEWORK

### ~ Title V ~

10.     The Clean Air Act aims "to protect and enhance the quality of the Nation's air resources." 42 U.S.C. § 7401(b)(1). To help meet this goal, the 1990 amendments to the Clean Air Act created an operating permit program that applies to all major sources of air pollution – the Title V permit program. *See* 42 U.S.C. §§ 7661-7661f.

11.     A primary purpose of the Title V permitting program is to reduce violations of the Clean Air Act and improve enforcement by recording in one document all of the air pollution control requirements that apply to a source of emissions. *See* New York Public Interest Research Group v. Whitman, 321 F.3d 316, 320 (2d Cir. 2003). Major sources of air pollution cannot legally emit pollutants into the air unless they have a valid Title V operating permit. 42 U.S.C. § 7661a(a).

12.     The Clean Air Act provides that the Administrator of EPA may approve states' programs to administer the Title V permitting program with respect to sources within their borders. 42 U.S.C. § 7661a(d). The EPA granted final approval of the Kentucky Title V operation permit program on October 31, 2001. *See* 66 Fed. Reg. 54,953 (Oct. 31, 2001). The Kentucky Department for Environmental Protection ("DEP"), Division for Air Quality ("DAQ") is the agency responsible for issuing Title V operating permits in Kentucky. 401 KAR 52:020.

13.     Before a Title V permit can be issued by a state with an approved Title V permit program, the State must forward a proposed Title V permit to EPA. 42 U.S.C. § 7661d(a)(1)(B). EPA then has forty-five (45) days in which it can review the proposed permit. EPA must object to the issuance of the permit if EPA finds that the permit does not comply with all applicable

4

provisions of the CAA. 42 U.S.C. § 7661d(b)(1). However, the reality is that EPA does not review most proposed Title V permits forwarded to it by state permitting agencies.

14. After EPA's forty-five (45) day review period, "any person may petition the Administrator within sixty (60) days" to object to the proposed permit. 42 U.S.C. § 7661d(b)(2).

15. Once it receives a petition for objection to a Title V permit, EPA must grant or deny that petition within sixty (60) days. *Id.;* New York Public Interest Research Group v. Whitman, 214 F. Supp. 2d 1, 2 (D.D.C. 2002).

### V.   STATEMENT OF FACTS

16. Dale is an old, dirty coal fired power plant located near Ford, Kentucky on the border of Madison County. The oldest unit at Dale is over fifty (50) years old and the "newest" unit is forty-five (45) years old. The Dale units use 19th century technology to generate electricity.

17. According to EPA, Dale emitted over 17.8 million pounds of sulfur dioxide in 2008. Sulfur dioxide is a precursory chemical to fine particulate matter. Fine particulate matter causes mortality and morbidity. There is no level of fine particulate matter that is safe. *See* 70 Fed. Reg. 65,983, 65,988 (Nov. 1, 2005) ("emissions reductions resulting in reduced concentrations below the level of the standards may continue to provide additional health benefits to the local population."); 71 Fed. Reg. 2620, 2635 (Jan. 17, 2006) (US EPA unable to find evidence supporting the selection of a threshold level of $PM_{2.5}$ under which the death and disease associated with $PM_{2.5}$ would not occur at the population level). North Carolina v. TVA, __ F.Supp.2d ____, 2009 WL 77998 (W.D.N.C. Jan. 13, 2009) at *8("Court finds that, at a minimum, there is an increased risk of incidences of premature mortality in the general public

associated with $PM_{2.5}$ exposure, even for levels at or below the NAAQS standard of 15 [u]g/m$^3$.").

18.     In addition, operation of Dale releases nitrogen oxides, carbon monoxide, particulate matter, volatile organic compounds, and hazardous air pollutants, all of which have been identified by the EPA as reasonably anticipated to endanger public health and welfare.

19.     Kentucky DAQ issued a draft Title V operating permit for Dale on May 6, 2008 (Permit No. V-08-009) and granted the public a period to comment on the draft permit.

20.     The Sierra Club submitted comments on the draft permit on June 5, 2008.

21.     Kentucky DAQ notified EPA of the issuance of the proposed permit on August 11, 2008 thereby triggering the commencement of EPA's forty-five (45) day review and comment period. The forty-five (45) day period expired on September 25, 2008.

22.     EPA did not object to the Dale Title V permit during its forty-five (45) day review period.

23.     On November 21, 2008, Plaintiff filed its petition for an objection to the Dale Station with EPA. Pursuant to 42 U.S.C. § 7661d(b)(2), Plaintiff timely filed its petition for an objection to the permit with EPA. EPA received Plaintiff's petition for an objection to the Dale Title V permit.

24.     The petition raised several issues with respect to the legality of the Dale Title V permit, including: [1] failure to include enforceable limits for the maximum heat input rates; and [2] failure to include an averaging time limit for the coal handling equipment for the PM emissions and a monitoring requirement. Plaintiff's arguments were raised with reasonable specificity in Plaintiff's comments to the Kentucky DAQ during the public comment period.

6

25. Pursuant to 42 U.S.C. § 7661d(b)(2), EPA had sixty (60) days from the filing of Plaintiff's Dale Title V petition to grant or deny the petition. EPA did not act to grant or deny Plaintiff's Dale Title V petition within that time period. EPA's sixty (60) day deadline to grant or deny Plaintiff's Title V petition expired on or around January 20, 2008.

26. On March 9, 2009, Plaintiff mailed a letter via certified mail, return receipt requested to Defendant Lisa P. Jackson stating that Plaintiff intended to sue Defendant for failure to respond to Plaintiff's petition for an objection to the Dale Title V permit within sixty (60) days.

27. More than sixty (60) days has passed since Defendant received Plaintiff's notice of intent to sue letter. Defendant has not remedied the violations alleged in this Complaint.

28. As of the date of filing of this complaint, EPA still has not granted or denied the petition.

## VI. CLAIM FOR RELIEF

### FIRST CLAIM FOR RELIEF

### FAILURE TO RESPOND TO PLAINTIFF'S PETITION FOR OBJECTION TO THE DALE TITLE V PERMIT

### (CAA 42 U.S.C. 7661d(b)(2))

29. Each allegation set forth in the complaint is incorporated herein by reference.

30. EPA has a mandatory duty to grant or deny within sixty (60) days Plaintiff's petition requesting that EPA object to the Dale Title V Permit pursuant to 42 U.S.C. § 7661d(b)(2) ("the Administrator shall grant or deny such petition within 60 days after the petition is filed").

31. It has been more than sixty (60) days since EPA received Plaintiff's petition requesting that EPA object to the Dale Title V Permit.

7

32. Defendant has not granted nor denied Plaintiff's Dale Title V petition.

33. Defendant's failure to grant or deny the petition constitutes a failure to perform an act or duty that is not discretionary with Defendant within the meaning of Clean Air Act § 304(a)(2). 42 U.S.C. § 7604(a)(2).

34. Therefore, EPA has violated and remains in violation of, its non-discretionary duty to grant or deny Plaintiff's petition within sixty (60) days, as required by 42 U.S.C. § 7661d(b)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

[A] Declare that Defendant's failure to grant or deny Plaintiff's petition for an objection to the Dale Title V permit constitutes a failure to perform an act or duty that is not discretionary with Defendant within the meaning of 42 U.S.C. § 7604(a)(2);

[B] Order Defendant to grant or deny Plaintiff's petition for an objection to the Dale Title V permit in accordance with an expeditious schedule prescribed by the Court;

[C] Retain jurisdiction of this action to ensure compliance with the Court's Order;

[D] Award Plaintiff the costs of litigation, including reasonable attorney's fees and costs; and



[E]    Grant such other relief as the Court deems just and proper.

                Respectfully submitted,

                /s/ Robert Ukeiley
                Robert Ukeiley

                Law Office of Robert Ukeiley
                435 R Chestnut Street, Suite 1
                Berea, KY 40403
                Tel: (859) 986-5402
                Fax: (866) 618-1017
                E-mail: rukeiley@igc.org

                Counsel for Sierra Club

Dated: May 28, 2009